UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

JUAN MANUEL RAMOS,

              Plaintiff,

       -against-

HEALTHY WAY ORGANIC MARKET
LLC, RAFIK SALEM ALMAMLOUH,
and ABDUL HAMID ALZAHERE,

              Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24-CV-1776 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Juan Manuel Ramos commenced this action against Defendants Healthy

Way Organic Market LLC ("Healthy Way"), Rafik Salem Almamlouh, and Abdul

Hamid Alzahere (collectively, "Defendants") on March 11, 2024. (Compl., ECF No. 1.)

Plaintiff alleges various claims, including violations of the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), Article 6 Section

190 *et seq.*

      On July 2, 2024, the Clerk of Court certified Defendants' default pursuant to Rule

55(a) of the Federal Rules of Civil Procedure. (Clerk's Entry of Default, ECF No. 13.)

Plaintiff subsequently moved for default judgment on November 29, 2024. (Mot. for

Default J., ECF No. 16.) For the reasons set forth below, this Court recommends that

Plaintiff's motion be granted and that a default judgment be entered.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Allegations in the Complaint

      Plaintiff alleges that he worked for Defendants in their food market from October

15, 2021, through on or about July 11, 2022. (Compl., ECF No. 1, ¶ 2.) According to the

complaint, Defendant Healthy Way Organic Market LLC is a food market located in Brooklyn, New York. (*Id.* ¶¶ 8, 27.) Defendants Almamlouh and Alzahere are Chief Executive Officers of Healthy Way, and act as "principal[s], officer[s], and or manager[s]." (*Id.* ¶¶ 10–11, 15–16.) Plaintiff alleges that Defendants are each an "employer" within the meaning of the FLSA, NYLL, and the New York Codes, Rules and Regulations. (*Id.* ¶ 19.) Plaintiff also alleges that Defendants Almamlouh and Alzahere are "personally liable for unpaid wages to the Plaintiff." (*Id.* ¶¶ 13, 18.)

Plaintiff alleges that, for his entire employment, he worked twelve hours per day, "alternating between working six days per week and seven days per week." (*Id.* ¶ 34.) Plaintiff would either work a morning shift, starting at 9:00 a.m. and ending at 9:00 p.m., or an evening shift, starting at 7:00 p.m. and ending at 7:00 a.m. (*Id.*) Plaintiff states that his job "included but was not limited to, preparing food, stocking merchandise, mopping, sweeping, taking out trash, and cleaning the counter." (*Id.* ¶ 33.) Plaintiff claims that he was paid, in cash, $18.00 per hour from October 15, 2021, until on or about June 1, 2022, and was paid $20.00 per hour from June 1, 2022, through the end of his employment.[1] (*Id.* ¶¶ 35–36.) Plaintiff further alleges that he was paid "straight time for all hours worked over forty which should have been paid as overtime," and that he did not receive an extra hour of pay at the minimum wage rate when his daily spread of hours exceeded ten hours. (*Id.* ¶¶ 37–38.)

---

[1] Plaintiff's complaint alleges that he received the hourly wage increase "on or about June 1, 2022." (Compl., ECF No. 1, ¶ 35.) However, the default motion and documents filed in support of the motion indicate that Plaintiff received the wage increase on July 1, 2022. (*See, e.g.*, Damages Chart, ECF No. 16-10; Ramos Decl., ECF No. 16-9, ¶ 16.)

Finally, Plaintiff alleges that Defendants failed to provide Plaintiff with a wage notice at the time of his hire or any time thereafter and never provided wage statements with Plaintiff's weekly pay. (*Id.* ¶¶ 39–40.) Plaintiff claims that:

> Defendants' failure to provide accurate and adequate wage statements prevented the Plaintiff from determining and seeking payment for the precise amount of unpaid wages. As such, Plaintiff was harmed by being deprived of his income for longer than he would have been had he been able to timely raise their underpayment earlier.

(*Id.* ¶ 3.) Plaintiff also avers that "Defendants' failure to provide accurate wage statements and wage notices has prevented Plaintiff from realizing he [w]as being underpaid and from taking appropriate action to obtain the payments due to him." (*Id.* ¶ 41.)

## II. Procedural History

As set forth above, Plaintiff initiated this action on March 11, 2024. (*See generally id.*) Plaintiff filed proof of service on March 14, 2024, indicating that Defendant Healthy Way was served on March 13, 2024, via the New York Secretary of State, rendering its answer due April 3, 2024. (Aff. of Service, ECF No. 7.) Defendant Healthy Way did not file an answer or otherwise respond to the complaint.

On April 10, 2024, after Defendant Healthy Way failed to file an answer by the April 3, 2024 deadline, the Court extended Healthy Way's time to answer to May 1, 2024, and directed Plaintiff to provide a copy of the Court's order to Healthy Way and to file proof of same by April 17, 2024. (Apr. 10, 2024 ECF Order.) The Court further directed Plaintiff to file a status report by May 8, 2024, if Defendant Healthy Way failed to answer or otherwise respond to the complaint. (*Id.*) On April 17, 2024, Plaintiff filed an affidavit of service indicating that he provided a copy of the Court's April 10, 2024 order to Defendant Healthy Way, as well as to Defendants Alzahere and Almamlouh, at the store's 265 Bedford Avenue, Brooklyn, New York 11211 address, and also sent the

order via mail to a second address for Almamlouh, 1224 74th Street, Brooklyn, New York 11228. (Aff. of Service, ECF No. 8.)

On April 19, 2024, Plaintiff filed proof of service of the summons and complaint as to Defendants Alzahere and Almamlouh, indicating that in-person service was effected at the location of Defendant Healthy Way's store, at 265 Bedford Ave., Brooklyn, New York 11211, on April 17, 2024, rendering their answers due May 8, 2024. (Affirmation of Service, ECF No. 9; Affirmation of Service, ECF No. 10; *see also* Compl., ECF No. 1, ¶ 8 (specifying business address of Defendant Healthy Way Organic Market as "265 Bedford Ave., Brooklyn, NY 11211").) Defendants Alzahere and Almamlouh did not file an answer or otherwise respond to the complaint.

On May 8, 2024, Plaintiff filed a status report representing that "all Defendants were served," and that the Court should expect their request for a certificate of default by May 24, 2024, in light of Defendants' failure to appear. (Status Report, ECF No. 11.) On June 15, 2024, after Plaintiff failed to meet his May 24, 2024 deadline, the Court directed Plaintiff to either request a certificate of default or file a status report by June 28, 2024. (June 15, 2024 ECF Order.) On June 25, 2024, Plaintiff requested a certificate of default. (Req. for Certificate of Default, ECF No. 12.) The Clerk of Court entered default against all three Defendants on July 2, 2024. (Clerk's Entry of Default, ECF No. 13.)

On August 15, 2024, the Court directed Plaintiff to either initiate a default motion or file a status report by September 5, 2024. (Aug. 15, 2024 ECF Order.) On September 3, 2024, Plaintiff requested an extension of time to file his default motion. (First Mot. for Extension of Time, ECF No. 14.) The Court granted Plaintiff's motion the following day, directing him to initiate a default motion or file a status report by October 3, 2024. (Sept. 4, 2024 ECF Order.) On October 3, 2024, Plaintiff again filed for an extension of time, and the Court again granted the motion the following day, extending Plaintiff's time to

4

file a default motion to November 4, 2024. (Second Mot. for Extension of Time, ECF No. 14; Oct. 4, 2024 ECF Order.) On November 8, 2024, the Court directed Plaintiff to initiate a default motion or file a status report by November 29, 2024, in light of Plaintiff's failure to make such filings by the previously set November 4, 2024 deadline. (Nov. 8, 2024 ECF Order.) The Court also notified Plaintiff that further extensions of time to file a default motion would not be looked upon favorably and may result in dismissal for failure to prosecute. (*Id.*)

On November 29, 2024, Plaintiff filed a motion for default judgment. (Mot. for Default J., ECF No. 16.) Plaintiff certified that the default motion paperwork was sent to Defendants by mail on December 3, 2024. (Certificate of Service, ECF No. 17.) On February 5, 2025, the Honorable LaShann DeArcy Hall referred the motion to the undersigned Magistrate Judge. (Feb. 5, 2025 ECF Order Referring Mot.)

On February 10, 2025, the Court scheduled a default motion hearing for March 18, 2025. (Feb. 10, 2025 ECF Scheduling Order.) At the hearing, Defendants did not appear, and the Court took the motion under advisement. (Mar. 18, 2025 ECF Min. Entry & Order.) The Court also directed Plaintiff to file, by April 11, 2025, (1) a proposed judgment detailing all requested relief, including any application for attorney's fees and costs; (2) any necessary documentation in support of any application for attorney's fees and costs; and (3) any supplemental briefing or authority on the question of whether service was properly effected on Defendants Alzahere and Almamlouh. (*Id.*)

On April 10, 2025, Plaintiff requested an extension of time to file the supplemental default documents pursuant to the Court's order. (Mot. for Extension of Time, ECF No. 19.) The Court granted Plaintiff's motion the following day, directing him to file his supplemental documentation in support of the default motion by April

5

25, 2025. (Apr. 11, 2025 ECF Order.) Plaintiff filed a supplemental memorandum in support of default, a supplemental declaration, and a revised proposed default judgment on April 25, 2025. (Suppl. Mem. of L. in Supp. of Default ("Suppl. Mem."), ECF No. 20; Kumar Suppl. Decl., ECF No. 20-1; Proposed J., ECF No. 20-3.) In the supplemental memorandum, Plaintiff stated that he "waives his rights to attorneys' fees and costs pursuant to Defendants' default in this matter," but that "to the extent [a] default judgment is not entered or Defendants successfully vacate same, Plaintiff reserves the right to move [for] attorneys' fees and costs upon successfully litigating this matter."[2] (Suppl. Mem., ECF No. 20, at 1.) Plaintiff also filed an affidavit of service indicating that Plaintiff sent via mail the supplemental default documents to Defendants at the 265 Bedford Avenue address on May 13, 2025. (Aff. of Service, ECF No. 21.)

## DISCUSSION

### I.  Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestly v. Headminder, Inc.,* 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(c). A "plaintiff is not entitled to a default judgment as a matter of right simply because a

---

[2] As discussed below, the Court recommends that Plaintiff's motion be granted and that a default judgment be entered against Defendants. Accordingly, the Court deems any entitlement to attorneys' fees and costs waived by Plaintiff for purposes of this motion. (*See* Suppl. Mem., ECF No. 20, at 1.)

party is in default." *Finkel v. Universal Elec. Corp.,* 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

---

[3] Plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was mailed to all Defendants at the Healthy Way store address (*see* Req. for Certificate of Default, ECF No. 12; Aff. of Service, ECF No. 12-3); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(a)(2), *see infra* n.5 (*see* Aff. of Service, ECF No. 7; Affirmation of Service, ECF No. 9; Affirmation of Service, ECF No. 10; Affirmation in Supp. of Req. for Certificate of Default, ECF No. 12-1, ¶ 4); (3) demonstrated that Individual Defendants are not minors and were not in the military during the relevant time period (*see* Affirmation in Supp. of Req. for Certificate of Default, ECF No. 12-1, ¶ 6; Kumar Decl., ECF No. 16-2, ¶¶ 11–13); and (4) certified the mailing of Plaintiff's default judgment motion and supporting documents to Defendant Healthy Way's last known business address and Individual Defendants' home addresses, in accordance with Local Rule 55.2(a)(3) (*see* Certificate of Service, ECF No. 17). "[T]he Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with the Local Rules." *Trs. of Loc. 813 Pension Tr. Fund v. Argento Rubbish Removal, Inc.*, No. 22-CV-5683 (FB) (PK), 2023 WL 5961658, at *3 (E.D.N.Y. Aug. 21, 2023) (quotation marks omitted), *report and recommendation adopted as modified*, 2023 WL 5956787 (E.D.N.Y. Sept. 13, 2023). The Court recommends excusing Plaintiff's noncompliance with Local Rules 55.1(a)(4) and 55.2(a)(3) insofar as the mailings of the request for the certificate of default and the supplemental default motion paperwork were sent to the business address of Corporate Defendant only, as opposed to the Individual Defendants' home addresses, in light of the ample notice that has been provided to Defendants. (*See* Aff. of Service, ECF No. 12-3; Aff. of Service, ECF No. 21.)

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Specific to FLSA and NYLL cases, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *2 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002). Here, Plaintiff seeks compensatory damages, liquidated damages, statutory

penalties, and pre- and post-judgment interest.[4] (*See* Compl., ECF No. 1, at pp. 10–11; Proposed J., ECF No. 20-3.) For the following reasons, the Court recommends entry of a default judgment in Plaintiff's favor and an award of damages and interest, as detailed below.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

---

[4] The complaint also seeks preliminary and permanent injunctions against Defendants to prevent them from engaging in the unlawful practices and policies alleged in the complaint, and an order restraining Defendants from retaliation. (Compl., ECF No. 1, at 10.) The complaint also seeks attorneys' fees and costs, but Plaintiff has since waived his request for fees and costs. (*Id.* at 11; *see* Suppl. Mem., ECF No. 20, at 1.) In addition, the proposed judgment submitted in support of this motion is silent as to any injunctive relief; the Court thus deems those requests to be waived. (*See* Proposed J., ECF No. 20-3.)

## A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding a willfulness. Plaintiff adequately served Corporate Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (Aff. of Service, ECF No. 7.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Plaintiff also adequately served Individual Defendants by serving copies of the summons and complaint on an individual at the Healthy Way Organic Market who identified himself as authorized to accept service, but declined to provide his name, and by mailing copies of the summons and complaint to each Individual

Defendant at the same address for the place of business.[5] (*See* Affirmation of Service, ECF No. 9 (Alzahere); Affirmation of Service, ECF No. 10 (Almamlouh); *see also* Suppl. Decl., ECF No. 20, at 3.) *See Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 331 (E.D.N.Y. 2024); *Tuccillo v. Tobin*, No. 13-CV-4525 (JMA) (SIL), 2024 WL 5159437, at *5 (E.D.N.Y. Dec. 18, 2024). Defendants also failed to respond after being sent the Court's April 10, 2024 order. (Aff. of Service, ECF No. 8.) Defendants again failed to respond or appear after Plaintiff moved for default judgment and after being sent notice of the

---

[5] The Court notes that Plaintiff served Individual Defendants by serving copies of the summons and complaint upon a "JOHN DOE" at the Healthy Way address. (*See* Affirmation of Service, ECF No. 9 (Alzahere); Affirmation of Service, ECF No. 10 (Almamlouh); *see also* Suppl. Decl., ECF No. 20, at 3; Process Server Photograph, ECF No. 20-2.) New York state law provides that service may be completed upon an individual by delivering the summons and complaint "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode" and by mailing the summons to the individual's last known residence or place of business. N.Y. C.P.L.R. § 308(2); *see Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 331 (E.D.N.Y. 2024). "'All that is required under CPLR 308 subdivision 2, with respect to personal service, is that process be served upon "a person of suitable age and discretion at the actual place of business," regardless of whether or not that person is an employee or is otherwise officially authorized to accept service on behalf of the defendant.'" *Dantzig v. County of Westchester*, No. 19-CV-8811 (NSR), 2021 WL 1030655, at *5 (S.D.N.Y. Mar. 16, 2021) (quoting *Pub. Adm'r of the County of New York v. Markowitz*, 557 N.Y.S.2d 348, 348 (N.Y. App. Div. 1st Dep't 1990)). "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." *Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013) (quotation marks omitted).

Here, Plaintiff has alleged that Individual Defendants are "principal[s], officer[s], and or manager[s]" of Healthy Way, and that the Individual Defendants' "principal place of business [is] located at 265 Bedford Avenue, Brooklyn, NY 11211." (Compl., ECF No. 1, ¶¶ 9–11, 14–16; *see also id.* ¶ 27 ("Defendants own and operate a food market in Brooklyn, New York.").) It therefore follows that Individual Defendants' "actual place of business" is Healthy Way. C.P.L.R. § 308(2); *Warshun*, 957 F. Supp. 2d at 266. Furthermore, "courts routinely uphold service on an unnamed individual of suitable age and discretion at the actual place of business (or dwelling) of the person to be served." *Tuccillo v. Tobin*, No. 13-CV-4525 (JMA) (SIL), 2024 WL 5159437, at *5 (E.D.N.Y. Dec. 18, 2024); *see also Nevelskiy v. Advanced Pro. Grp., Inc.*, 735 F. Supp. 3d 148, 158–59 (E.D.N.Y. 2024). The Court therefore finds that Individual Defendants were adequately served.

motion and default hearing both from Plaintiff and the Clerk of Court.[6] (Mot. for Default J., ECF No. 16; Aff. of Service, ECF No. 12-3; Certificate of Service, ECF No. 17; Feb. 10, 2025 ECF Scheduling Order.)

In light of Defendants' failure to respond, despite being provided sufficient notice of this proceeding, the Court weighs this factor in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

### C. Prejudice

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

---

[6] Defendants were also sent copies of the Court's minute entry for the March 18, 2025 default motion hearing and Plaintiff's supplemental memorandum. (*See* Mar. 18, 2025 ECF Min. Entry & Order; Aff. of Service, ECF No. 21.)

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

## III. Liability and Damages

### A. FLSA Liability

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (quotation marks omitted), *report and recommendation adopted*, Sept. 12, 2018 ECF Order Adopting R. & R.

#### 1. *Employers Subject to the FLSA*

An employer is subject to the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251,

257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the Court finds that Plaintiff has adequately alleged that Corporate Defendant is an "[e]nterprise engaged in commerce" and therefore subject to the FLSA. 29 U.S.C. § 203(s)(1). Specifically, Plaintiff alleges that Corporate Defendant "used supplies in the course of business" that "originated in states other than New York," including "various meats and vegetables, rice, oil, forks, knives, plastic containers, and cleaning supplies." (Compl., ECF No. 1, ¶ 24.) Plaintiff further alleges that, for at least 2021 through 2024, "the gross receipts of the [Corporate Defendant] Company were not less than $500,000.00." (*Id.* ¶¶ 20–23.)

Although Plaintiff's allegations are somewhat conclusory, courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted); *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009). In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530. As Plaintiff alleges, and as the Court may safely infer, goods and materials produced in interstate commerce were used in the operation of Defendants' business. (*See* Compl.,

14

ECF No. 1, ¶ 24.) *See Romanowicz,* 577 F.3d at 84 ("In light of [a defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor . . . ."); *Shim v. Millennium Grp.,* No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding that employer was engaged in interstate commerce where it was "simply inconceivable that none of the [goods] used" in its business "originated outside of New York"). Given the nature of Corporate Defendant's business, it is reasonable to infer that the materials used in operating the store were not exclusively sourced in New York. Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendant is subject to the FLSA.

With respect to Defendants Almamlouh and Alzahere, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.,* No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016) (citation omitted), *report and recommendation adopted,* 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds,* 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018). Here, Plaintiff alleges that Defendants Almamlouh and Alzahere "had the undisputed authority and final say in all matters concerning the Company and all its employees, including but not limited to hiring and firing practices, promotions and compensation, supervising, maintaining employment records, and the day-to-day activities at the Company." (Compl., ECF No. 1, ¶ 29.) Plaintiff further alleges that Defendant Almamlouh "hired Plaintiff and set his compensation, possessed and

15

wielded this authority over Plaintiff throughout his entire employment," and that both Individual Defendants "set Plaintiff's schedule and told him what job duties to complete and in what order to complete them." (*Id.* ¶¶ 30–31.) Taking these allegations as true in the context of default, the Court finds that Defendants Almamlouh and Alzahere were employers subject to the FLSA. *See, e.g., Lopez v. Royal Thai Plus, LLC,* No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

    2. *Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment,' sufficient to support a finding of employee status . . . ." *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 91 (2d Cir. 2013)).

Here, Plaintiff alleges that he was employed by Defendants to work at Corporate Defendant, a Brooklyn food market, "preparing food, stocking merchandise, mopping, sweeping, taking out trash, and cleaning the counter." (Compl., ECF No. 1, ¶¶ 27, 30–31, 33.) "It follows, therefore, that for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA." *Garcia v. Badyna,* No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.,* 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]" (alterations in original)

(quotation marks omitted)). Taking these allegations as true in the context of this default, the Court finds that Plaintiff was an employee covered by the FLSA.

### 3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiff alleges that he was employed to work at the food market — a position of employment not contemplated by any of the statutory exemptions. (Compl., ECF No. 1, ¶¶ 27, 33.) *See* 29 U.S.C. § 213(a). For the purposes of this default motion, Plaintiff has therefore adequately alleged facts establishing applicability of the FLSA as a predicate to his claims under that statute.

## B. Liability Under the NYLL

To recover under the NYLL, a plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (alteration in original) (citing NYLL § 650 *et seq.;* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also Lauria v. Heffernan,* 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.,* 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds,* 811 F.3d 528 (2d Cir. 2016); *see Ethelberth,* 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Having already found that Plaintiff has sufficiently pleaded that Defendants were employers and that Plaintiff was their employee under the FLSA, the Court finds that Plaintiff has also adequately alleged an employee relationship with Defendants under the NYLL.

## C. Violations of the FLSA and the NYLL

Having determined Defendants' liability, the Court must now decide whether Plaintiff is entitled to a default judgment and damages. As a preliminary matter, the Court notes that Plaintiff's claims fall within the three-year statute of limitations for "willful" violations of the FLSA and the six-year statute of limitations under the NYLL.[7] *See* 29 U.S.C. § 255(a) (stating that "a cause of action arising out of a willful violation may be commenced within three years"); NYLL § 198(3) (noting a six-year statute of limitations).

### 1. *Overtime Violation*

Plaintiff alleges that Defendants violated the FLSA and the NYLL by failing to pay him overtime wages for hours worked in excess of 40 hours per week. (*See* Compl., ECF No. 1, ¶¶ 34–37, 44–56.) Accepting Plaintiff's factual allegations as true, the Court

---

[7] The statute of limitations for ordinary FLSA violations is two years. *See* 29 U.S.C. § 255(a). Plaintiff seeks damages for unpaid wages beginning October 15, 2021, and filed this action on March 11, 2024, more than two years after his claim began to accrue. (*See generally* Compl., ECF No. 1.) However, "willful" violations of the FLSA allow plaintiffs to take advantage of a three-year statute of limitations, though these violations require a higher pleading burden than ordinary FLSA claims. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–25 (2d Cir. 2021) (discussing 29 U.S.C. § 255(a)). "A violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether the conduct was prohibited[.]'" *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (alteration in original) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017). Additionally, "on a default judgment, as with other unrebutted assertions, allegations of willful violations of the FLSA are sufficient to establish willfulness." *Romero v. Floris Constr., Inc.*, No. 16-CV-4282 (PKC) (RLM), 2017 WL 5592681, at *4 (E.D.N.Y. Nov. 20, 2017).

Here, Plaintiff alleges that Defendants "flagrant[ly] and willful[ly]" violated the FLSA. (Compl., ECF No. 1, ¶¶ 1, 48, 51.) Plaintiff further claims that Defendants "willfully failed to pay him properly" and "acted in the manner described herein so as to maximize their profits while minimizing their labor costs." (*Id.* ¶ 42.) The Court finds that Plaintiff has adequately alleged that Defendants' violations were willful and Defendants have failed to appear and rebut the allegations. Plaintiff's FLSA claims are therefore deemed timely.

recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and the NYLL.

Under both statutes, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . the [FLSA]."). Accordingly, to establish liability under the FLSA for an unpaid overtime claim, the "plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Plaintiff must also show "that the[ir] employer had actual or constructive knowledge" of their overtime hours. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

Here, Plaintiff alleges that Individual Defendants "set Plaintiff's schedule," indicating that Defendants had actual knowledge of Plaintiff's overtime hours. (Compl., ECF No. 1, ¶ 31.) *See Kuebel*, 643 F.3d at 361. Plaintiff claims that he worked twelve hours per day, alternating between six days per week and seven days per week, from October 15, 2021, through on or about July 11, 2022, and that his average weekly hours were greater than 40 for his entire period of employment. (*See* Compl., ECF No. 1, ¶¶ 2, 34, 47.) Plaintiff also states in the default motion papers that he was paid $18.00 per hour from October 15, 2021, to June 30, 2022, and $20.00 per hour from July 1, 2022,

through on or about July 11, 2022.[8] (Ramos Decl., ECF No. 16-9, ¶ 16; Damages Chart, ECF No. 16-10.) Plaintiff further alleges that "Defendants paid him straight time for all hours worked over forty which should have been paid as overtime." (Compl., ECF No. 1, ¶ 37.)

Because Plaintiff has already been paid the regular rate for all hours worked, the overtime wage deficiency is calculated by multiplying the difference between his regular hourly rate and the overtime wage rate (his hourly rate times 1.5) by the total number of overtime hours worked. *See, e.g.*, *Kim v. J&J Safetymate Corp.*, No. 22-CV-1070 (TAM), 2025 WL 1384135, at *5 (E.D.N.Y. May 13, 2025); *Perez Campos v. Quentin Market Corp.*, No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *6 (E.D.N.Y. Oct. 17, 2018) (similar), *report and recommendation adopted*, Mar. 31, 2019 ECF Order Adopting R. & R. In his declaration submitted in support of this motion, Plaintiff states that he worked from October 15, 2021, until July 11, 2022, for 78 hours per week (12 hours x 6.5 days) on average, for a total of 38 hours of overtime each week. (*See* Ramos Decl., ECF No. 16-9, ¶¶ 13, 15.) He further states that from the start of his employment until the end of June 2022, he was paid $18.00 per hour, followed by $20.00 per hour from July 1, 2022, until the end of his employment. (*Id.* ¶ 16.) Accordingly, the Court finds that Plaintiff is entitled to **$13,250.60** in compensatory damages for his overtime wage deficiency, as set forth below.

---

[8] As discussed above, Plaintiff's complaint alleges that he received the hourly wage increase "on or about June 1, 2022." (Compl., ECF No. 1, ¶ 35.) However, the default motion and documents filed in support of the motion indicate that Plaintiff received the wage increase on July 1, 2022. The Court calculates Plaintiff's overtime wages damages using the representations included in Plaintiff's sworn declaration, submitted in support of the default motion. (*See* Ramos Decl., ECF No. 16-9, ¶ 16; *see also* Damages Chart, ECF No. 16-10.) *See also Tamarin*, 13 F.3d at 53–54.

| Period Date Range | Number of Weeks | Regular Rate of Pay | Overtime Pay | Pay Differential | Overtime Hours Worked (weeks x 38 hours per week) | Overtime Wage Total |
|---|---|---|---|---|---|---|
| 10/15/2021 – 6/30/2022 | 37 | $18.00 | $27.00 | $9.00 | 1,406 | $12,654.00 |
| 7/1/2022 – 7/11/2022 | 1.57 | $20.00 | $30.00 | $10.00 | 59.66 | $596.60 |
| Total Unpaid Overtime Wage Deficiency | | | | | | $13,250.60 |

2. *Unpaid Spread-of-Hours Pay*

Under the NYLL spread-of-hours provision, employees who make minimum wage or less are entitled to an additional hour of pay at the prevailing minimum wage for every day they work more than 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("An employee shall receive one [additional] hour's pay at the basic minimum hourly wage rate . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."). "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015); *see also Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 294 (E.D.N.Y. 2024) (finding that plaintiffs were entitled to spread-of-hours pay for the period in which plaintiffs were paid less than minimum wage); *Guadalupe v. Tri-State Emp., Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (deferring to the New York Department of Labor's interpretation that spread-of-hours pay is not available to employees whose compensation exceeds minimum wage).

Here, as set forth above, Plaintiff alleged in his complaint and swore in his declaration in support of the default motion that his hourly wage started at $18.00 per hour and then went up to $20.00. (*See* Compl., ECF No. 1, ¶¶ 2, 34; Ramos Decl., ECF No. 16-9, ¶¶ 13, 15.) These hourly rates are higher than both the federal and New York City minimum wage rates for that time period, which were $7.25 and $15.00,

respectively.[9] *See Fermin*, 93 F. Supp. 3d at 45. Because Plaintiff's hourly wages were more than the applicable minimum wage rates, the Court recommends denying Plaintiff's claim for spread-of-hours pay.

 3. *New York Wage Theft Protection Act ("WTPA") Violations*

 Plaintiff also requests a default judgment with respect to Defendants' alleged violations of the NYLL's wage notice and statement requirements, which were codified as part of the WTPA. *See* NYLL §§ 195, 195-3. Under these provisions, an employer must provide its employees: (1) "written notice of their rate, how it will be paid ('by the hour, shift, day, week, salary, piece, commission or other'), allowances, ('including tip') and the employer's address and contact information," and (2) and "'a statement of every payment of wages.'" *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM) (SIL), 2025 WL 1808694, at *11 (E.D.N.Y. July 1, 2025) (quoting NYLL §§ 195(1), 195(3)). An employer who fails to provide the required notices and statements is liable for statutory damages. *See* NYLL §§ 198(1-b), 198(1-d).

 Plaintiff must establish Article III standing with respect to his wage notice and statement claims. *See Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 302, 304 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (noting that the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right'" (quoting *Spokeo, Inc. v.*

---

 [9] *See* New York Department of Labor, History of Minimum Wage, *available at* https://dol.ny.gov/history-minimum-wage-new-york-state; U.S. Department of Labor, History of Minimum Wage Rates, *available at* https://www.dol.gov/agencies/whd/minimum-wage/history/chart.

*Robins*, 578 U.S. 330, 341 (2016))). To establish standing, a plaintiff must have

"'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"

*Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (alteration in

original) (quoting *Spokeo*, 578 U.S. at 338). For claims brought under the WTPA, the

alleged concrete injury-in-fact must "result[] from the failure to provide the wage

notices and wage statements to maintain a claim for statutory damages under New

York Labor Law § 195." *Guthrie*, 113 F.4th at 302–03. Further, in the wake of *Guthrie*,

courts in this Circuit have found that "[p]laintiffs sufficiently establish Article III

standing when they allege that the denial of the statutory right to wage notices and

wage statements ultimately resulted in underpayment." *Rosas v. M & M LA Solucion Flat

Fixed Inc.*, No. 23-CV-1212 (DG) (MMH), 2024 WL 4131905, at *12 (E.D.N.Y. Sept. 10,

2024), *report and recommendation adopted*, Sept. 30, 2024 ECF Order Adopting R. & R.; *see

also Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024)

(collecting cases); *Zambrano*, 2025 WL 1808694, at *12–13 (granting summary judgment

on wage statement and notice claims).

   Here, Plaintiff alleges that Defendants' failure to provide wage notices and wage

statements prevented him "from determining and seeking payment for the precise

amount of unpaid wages," and "from realizing he [w]as being underpaid and from

taking appropriate action" to obtain any payments due; Plaintiff also avers that he "was

harmed by being deprived of his income for longer than he would have been had he

been able to timely raise their underpayment earlier." (Compl., ECF No. 1, ¶¶ 3, 41; *see

also* Hr'g Tr., ECF No. 22, at 6:13–8:10.) By alleging that the lack of wage notice and

wage statements prevented Plaintiff from realizing that he was being underpaid and

from correcting the underpayments, Plaintiff has alleged "some causal connection

between the lack of accurate notices and the downstream harm." *Guthrie*, 113 F.4th at 308. The Court therefore finds that Plaintiff's allegations are sufficient to establish standing for his wage notice and statement claims. *See Rosas,* 2024 WL 4131905, at *12–13.

Statutory damages for wage notice and wage statement violations under the WTPA are collectively capped at $10,000. *See* NYLL §§ 198(1-b), 198(1-d). Because Plaintiff has alleged that Defendants continually violated these requirements during the entirety of his employment, and given the duration of his employment, Plaintiff is entitled to the maximum amount of statutory damages. *See Du v. CGS Metal Fabrication, Inc.*, No. 19-CV-1821 (ARR) (TAM), 2022 WL 987316, at *9 (E.D.N.Y. Jan. 14, 2022); *report and recommendation adopted,* Jan. 31, 2022 ECF Order Adopting R. & R. For the reasons discussed above, the Court recommends awarding **$10,000** in statutory damages.

\* \* \* \* \*

In summary, the Court respectfully recommends that Plaintiff be awarded **$13,250.60** in compensatory damages for unpaid overtime wages and **$10,000.00** in statutory damages.

### D. Liquidated Damages and Interest

#### 1. *Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee is also entitled to recover liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts

underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). Because a plaintiff cannot obtain a double recovery, courts award liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *see, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Under these provisions, the Court recommends an award of liquidated damages equal to Plaintiff's compensatory damages award under the NYLL, i.e., **$13,250.60**.

2. *Prejudgment Interest*

As to Plaintiff's request for prejudgment interest, it "is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin*, 93 F. Supp. 3d at 48; *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *Begum*, 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012) (explaining

that liquidated damages under the NYLL are "punitive in purpose"), *report and recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013). Here, since Plaintiff is entitled to an equivalent award of compensatory overtime damages under the NYLL, the Court finds that Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, from "[the] midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (quotation marks omitted).

Here, given that the relevant dates of Plaintiff's employment are October 15, 2021, to July 11, 2022, the midpoint of Plaintiff's claim period is approximately February

26, 2022. The Court therefore recommends awarding prejudgment interest under the NYLL on Plaintiff's compensatory damages award of $13,250.60 from February 26, 2022, through the date judgment is entered at a per diem interest rate of **3.27** ($13,250.60 x 0.09 / 365).

### 3. *Post-Judgment Interest*

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "'from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment.'" *Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (alteration in original) (quoting 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021). In *Fermin*, the court awarded post-judgment interest on all sums awarded pursuant to the plaintiffs' FLSA and NYLL wage-and-hour claims. 93 F. Supp. 3d at 53. The same approach is appropriate here. The Court therefore respectfully recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, the Court recommends finding that entry of default is warranted and that, under the default judgment standard, Plaintiff has established that Defendants violated the FLSA and NYLL with respect to Plaintiff's overtime wage claims, and that Defendants violated the NYLL with respect to Plaintiff's WTPA claims.

The Court further recommends finding that Plaintiff has not established entitlement to his spread-of-hours claim. Accordingly, the Court respectfully recommends that Plaintiff's motion be granted and that a default judgment be entered against Defendants.

With respect to damages, the Court recommends that Plaintiff be awarded a sum of **$36,501.20**, comprised as follows: **$13,250.60** in compensatory damages; **$13,250.60** in liquidated damages; and **$10,000** in statutory damages. The Court further recommends that prejudgment interest on Plaintiff's unpaid overtime wages of $13,250.60 be awarded at a per diem interest rate of **$3.27** from February 26, 2022, to the date of the entry of final judgment, and that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[10]

\*     \*     \*     \*     \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Healthy Way, Almamlouh, and Alzahere. As a courtesy, the Court

---

[10] The New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,*

also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by August 18, 2025. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable LaShann DeArcy Hall at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

      **SO ORDERED.**

Dated:  Brooklyn, New York
     August 13, 2025

                                *Taryn A. Merkl*
                    TARYN A. MERKL
                    UNITED STATES MAGISTRATE JUDGE

---

No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See Rodriguez*, 2018 WL 7252949, at *12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).